976 P.2d 295 (1998)
Amy KINDER, Petitioner,
v.
The INDUSTRIAL CLAIM APPEALS OFFICE OF THE STATE OF COLORADO; Director, Executive Department, State of Colorado; Colorado State University and Colorado Compensation Insurance Authority, Respondents.
No. 97CA1762.
Colorado Court of Appeals, Division IV.
May 28, 1998.
Rehearing Denied July 2, 1998.
*296 Dwyer, Huddleson & Ray, P.C., Stephen J. Jouard, Fort Collins, for Petitioner.
No Appearance for Respondent Industrial Claim Appeals Office.
Colorado Compensation Insurance Authority, Curt Kriksciun, Denver, for Respondents Colorado State University and Colorado Compensation Insurance Authority.
Opinion by Judge CASEBOLT.
Amy Kinder (claimant) seeks review of a final order of the Industrial Claim Appeals Office (Panel) that denied her claim for medical impairment benefits against Colorado State University (college) and the Colorado Compensation Insurance Authority (collectively CCIA). She also challenges the constitutionality of those portions of the Workers' Compensation Act (Act) as construed by the Panel when it determined that, as an unpaid student intern, she was not entitled to such benefits. We set aside the order.
As part of a degree program, the college placed claimant as an unpaid student intern with a sponsoring employer. During the course of her duties, claimant was injured and sustained permanent medical impairment of 12% of the whole person. Upon the completion of her education, she was hired by the sponsoring employer into the same position she had held as an intern.
The college provided workers' compensation coverage for claimant during the internship and CCIA admitted liability for medical benefits. However, because claimant earned no wages as an unpaid student intern, CCIA denied liability for medical impairment benefits.
Concluding that claimant was entitled to such benefits, the Administrative Law Judge (ALJ) calculated them by imputing an average weekly wage based upon claimant's actual wages earned from the sponsoring employer after the completion of her internship. The Panel interpreted the applicable statutes differently, concluded that claimant was not entitled to an imputed average weekly wage, and set aside the award of medical impairment benefits. This appeal followed.
Claimant contends the applicable statutes should be interpreted to provide that unpaid student interns placed with a sponsoring employer for training should have an average weekly wage imputed to them so that medical impairment benefits may be calculated and awarded. We agree.
Medical impairment benefits for a whole person impairment are based, indirectly, upon a claimant's average weekly wage. Section 8-42-107(8)(d), C.R.S.1997, provides that medical impairment benefits for whole person impairment shall be calculated at the temporary total disability rate, and under § 8-42-105(1), C.R.S.1997, the temporary *297 disability rate is sixty-six and two-thirds percent of the claimant's average weekly wage.
The general rule is that a worker who has no wage loss is not entitled to temporary disability benefits because the temporary disability rate is based upon lost wages. However, § 8-40-202(1)(a), C.R.S.1997, creates certain exceptions to the usual measure of calculating temporary disability benefits. See Parker Fire Protection District v. Poage, 843 P.2d 108 (Colo.App.1992) (construing § 8-40-202(1)(a)(II), C.R.S.1997, which creates such an exception for certain volunteer and unsalaried workers such as firefighters and other workers involved in potentially dangerous activities). The sole issue here is whether claimant comes within the terms of this statute.
The imputed wage provision, § 8-40-202(1)(a)(VI), C.R.S.1997, states:
The rate of compensation for a person placed pursuant to subparagraph (IV) of this paragraph (a) if accidentally injured or, if killed, for dependents of such person shall be based upon the wages normally paid in the community in which such person resides or in the community where said work or job training or rehabilitation program is being conducted for the type of work in which the person is engaged at the time of such injury or death, as determined by the director ....
(emphasis added)
The question, then, is whether a student intern is "a person placed pursuant to subparagraph (IV) of this paragraph (a)." If the intern is such a person, then he or she should receive the imputed wage. Conversely, if not, then the imputed wage statute does not apply.
That portion of § 8-40-202(1)(a)(IV), C.R.S.1997, applicable here states that:

Except as provided in section 8-40-301(3) and section 8-40-302(7)(a), any person who may at any time be receiving training under any work or job training or rehabilitation program sponsored by any... college and who, as part of any such work or job training or rehabilitation program of any ... college, is placed with any employer for the purpose of training or learning trades or occupations shall be deemed while so engaged to be an employee of the respective ... college sponsoring such training or rehabilitation program.... (emphasis added)
Section 8-40-302(7), C.R.S.1997, to which § 8-40-202(1)(a)(IV) refers, addresses the respective liabilities for coverage between sponsoring employers and the educational institutions. It provides that:
(a) Any employer ... who enters into a bona fide cooperative education or student internship program sponsored by an educational institution for the purpose of providing on-the-job training for students shall be deemed an employer of such students for the purposes of workers' compensation and liability insurance pursuant to articles 40 to 47 of this title.
(b) If the student placed in an on-the-job training program does not receive any pay or remuneration from the employer, the educational institution sponsoring the student in the cooperative education or student internship program shall insure the student through the institution's workers' compensation and liability insurance or enter into negotiations with the employer for the purpose of arriving at a reasonable level of compensation to the employer for the employer's expense of providing workers' compensation and liability insurance while such student is participating in on-the-job training with said employer .... (emphasis added)
Section 8-40-302(7)(c), C.R.S.1997, further provides the definition of a "cooperative education or student internship program." There is no dispute that the program in which claimant was enrolled falls within this definition.
Our primary task in construing these statutes is to give effect to the intent of the General Assembly. The plain language of the statutes should first be considered, and only if there is an ambiguity should other rules of statutory construction then be applied. Mountain City Meat Co. v. Oqueda, 919 P.2d 246 (Colo.1996).
When two or more statutes address the same subject matter, they should be construed *298 together. See Lucero v. Climax Molybdenum Co., 732 P.2d 642 (Colo.1987). When two statutory constructions are possible, one constitutional and the other unconstitutional, we must choose the one that renders the statute constitutional. Meyer v. Putnam, 186 Colo. 132, 526 P.2d 139 (1974).
The Panel adopted CCIA's argument that claimant is excluded from the imputed wage provision of § 8-40-202(1)(a)(VI) because she was not a person "placed pursuant to" § 8-40-202(1)(a)(IV), and instead, was a student intern placed pursuant to § 8-40-302(7)(a), C.R.S.1997. It therefore held that § 8-40-202(1)(a)(IV) specifically excluded persons, like claimant, who are injured while participating in an unpaid student internship program.
However, like the ALJ, we reject this interpretation and conclude that § 8-40-302(7)(a) addresses whether an entity is deemed to be an employer, identifies a claimant's "employer," and allocates liability for workers' compensation insurance; however, it does not expressly limit the type or amount of benefits a student intern may receive. See § 8-40-302, C.R.S.1997 (entitled "Scope of term `employer' "); L.E.L. Construction v. Goode, 867 P.2d 875 (Colo. 1994) (title of a statute is relevant to the determination of legislative intent).
The phrase "except as provided by § 8-40-302(7)(a)" in § 8-40-202(a)(IV) creates an exception to the presumption that the sponsoring school is the employer of a person receiving training in a program sponsored by a college. It does not purport to preclude a student intern from receiving medical impairment benefits.
Contrary to CCIA's contention, this construction is not inconsistent with the exclusion of inmates in § 8-40-202(1)(a)(IV) ("except as provided in section 8-40-301(3)"). Section 8-40-301, C.R.S.1997, which sets forth the scope of the term "employee," excludes certain classes of persons from the definition of "employee," and inmates are specifically listed therein. However, if the General Assembly had intended also to exclude unpaid interns from the definition of "employee," it could easily and explicitly have accomplished this by including them in this section. Its failure to do so leads us to conclude that its intent was otherwise.
Moreover, the Panel's interpretation raises serious constitutional equal protection concerns. Under the Panel's interpretation, an unpaid intern with an injury enumerated on the schedule in § 8-42-107(2), C.R.S.1997, would be awarded medical impairment benefits, while unpaid interns with injuries not falling under the schedule would be precluded from the receipt of medical impairment benefits otherwise provided in § 8-42-107(8), C.R.S.1997. Indeed, CCIA concedes, and both the ALJ and the Panel agreed, that if claimant had suffered a scheduled injury, she would have been entitled to medical impairment benefits under the schedule because those benefits, unlike unscheduled medical impairment benefits, are not dependent upon the existence of an average weekly wage for their calculation.
We are not convinced that there is any rational basis for awarding an unpaid intern scheduled benefits for what may be considered less serious injuries, yet denying benefits altogether for unscheduled, and usually more severe, injuries. See Duran v. Industrial Claim Appeals Office, 883 P.2d 477 (Colo.1994) (concluding that the rational reason for compensating scheduled injuries less generously is that they are usually less severe than unscheduled ones).
Thus, our interpretation of these statutes follows the guiding principle that, when possible, statutes should be construed so as to avoid questions concerning their constitutional validity. See Adams County School District No. 50 v. Heimer, 919 P.2d 786 (Colo. 1996); BCW Enterprises, Ltd. v. Industrial Claim Appeals Office, 964 P.2d 533 (Colo. App. No. 96CA1033, September 18, 1997).
Accordingly, we hold that unpaid student interns fall within the provisions of § 8-40-202(1)(a)(VI) and, therefore, are entitled to the imputation of an average weekly wage. It follows that claimant is entitled to an award of medical impairment benefits based upon her average weekly wage as determined by the ALJ.
This disposition obviates the need to consider claimant's alternative argument that *299 the ALJ had discretion to fashion an average weekly wage pursuant to § 8-42-102(3), C.R.S.1997.
The order of the Panel is set aside, and the cause is remanded with directions to reinstate the ALJ's order awarding claimant medical impairment benefits.
Judge RULAND and Judge ROY concur.